IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSHUA THURSTON, *Plaintiff,* | § | SA-20-CV-00513-FB |
| vs. | § | |
| EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANSUNION, LLC, USAA FEDERAL SAVINGS BANK, ARMY AND AIR FORCE EXCHANGE SERVICE, D/B/A MILITARY STAR; *Defendants.* | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Army and Air Force Exchange Service, d/b/a Military Star's Motion to Dismiss [#29]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#37]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In issuing this recommendation, the undersigned has also considered Plaintiff's Memorandum of Law in Support of its Opposition to Defendant's Motion [#43] and Defendant's Reply in Support of its Motion [#45]. For the reasons set forth below, it is recommended that Defendant's motion be **GRANTED**.

**I. Background**

Plaintiff Joshua Thurston filed this case against the Army and Airforce Exchange Service d/b/a Military Star ("AAFES") and other Defendants,[1] alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Thurston alleges that TransUnion and Experian, as credit bureaus, prepared and issued credit reports concerning Thurston that included inaccurate information related to a loan obtained from USAA Federal Savings Bank in conjunction with a motorcycle purchase. (Compl. [#1] at ¶¶ 18–19.) Thurston also alleges that TransUnion, Equifax, and Experian prepared and issued credit reports containing inaccurate information relating to his account with Military Star. (*Id.* at ¶ 32.) Military Star is a credit card program run by AAFES. (Mtn. [#29] at 1 n.1.) The dispute involving Thurston's Military Star account concerns a late payment for the month of December 2018. (Compl. [#1] at ¶ 33.)

According to Thurston, AAFES failed to conduct a reasonable investigation after receiving notice of a dispute regarding Thurston's credit reports. (*Id.* at ¶¶ 36–37.) Thurston claims AAFES has continued to furnish false and inaccurate adverse information on the consumer report with respect to the disputed account, which continues to affect Thurston's credit score. (*Id.* at ¶¶ 37–44.) The only causes of action asserted against AAFES are Counts Nine and Ten of the Complaint, which assert that the alleged conduct constitutes both willful and negligent violations of the FCRA. (*Id.* at ¶¶ 110–32.) Thurston seeks actual and punitive damages, as well as attorneys' fees and costs under the FCRA. (*Id.* at ¶¶ 119–20.)

AAFES has moved to dismiss Thurston's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. AAFES argues that it is an

[1] Thurston's Complaint also named Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), TransUnion, LLC ("TransUnion"), and USAA Federal Savings Bank ("USAA") as Defendants. Thurston has settled his claims with Equifax and USAA [#49, #53].

instrumentality of the federal government and therefore enjoys sovereign immunity from suit. Thurston asks this Court to find that the FCRA waived the United States' sovereign immunity with respect to claims for damages arising under the FCRA and to deny AAFES's motion. The motion is ripe for review.

## II. Legal Standard

Sovereign immunity is jurisdictional in nature. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject-matter jurisdiction of the district court to hear a case. *See* Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161. When a court's subject matter jurisdiction is factually attacked, the court may consider matters outside of the pleadings. *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). Where a motion to dismiss for lack of jurisdiction is limited to a facial attack on the pleadings, as here, it is subject to the same standard as a motion brought under Rule 12(b)(6). *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). In facial attacks, the court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *O'Rourke v. United States*, 298 F. Supp. 2d 531, 534 (E.D. Tex. 2004) (applying this standard to Rule 12(b)(1) motion). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Ramming*, 668 F.3d at 161.

## III. Analysis

AAFES seeks dismissal of Thurston's FCRA claims because it contends it enjoys sovereign immunity from suit. AAFES argues that it is an instrumentality of the United States government, runs the Military Star credit card program, and is the proper defendant in this suit.

Indeed, the Supreme Court has recognized AAFES as "a non-appropriated fund instrumentality of the United States" and an "arm of the government deemed by it essential for the performance of governmental functions." *Army & Air Force Exchange Serv. v. Sheehan*, 456 U.S. 728, 729 n.1, 733 (1982) (citations and quotations omitted). "AAFES is under the control of the Secretaries of the Army and Air Force and, like other military post exchanges, is intended 'to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices.'" *Id.* at 729 n.1 (quoting *Standard Oil Co. v. Johnson*, 316 U.S. 481, 484–85 (1942)). As an arm of the government, AAFES "partake[s] of whatever immunities it may have under the constitution and federal statutes." *Id.* at 733–34 (quoting *United States v. Miss. Tax Comm'n*, 421 U.S. 599, 606 (1975)). Thurston concedes that AAFES, which is doing business as Military Star in connection with this lawsuit, is an agency of the United States government. The issue is whether the FCRA waives that immunity.

**A. AAFES enjoys sovereign immunity from suit, unless the FCRA unequivocally waives the immunity of the federal government.**

As a sovereign, the United States is immune from suit unless it expressly consents to be sued by an act of Congress. *Meyer*, 510 U.S. at 475. Absent a statutory waiver of immunity, the principle of sovereign immunity "shields the Federal Government and its agencies from suit." *Id.* If the government has not waived its immunity, the court lacks subject matter jurisdiction over the governmental party, and the barred claims must be dismissed without prejudice under Rule 12(b)(1). *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

The burden of demonstrating a waiver of sovereign immunity is a heavy one. *See Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 276 (1959) ("The conclusion that there has been a waiver of immunity will not be lightly inferred . . . ."). A waiver of sovereign immunity must be "unequivocally expressed in statutory text . . . and will not be implied." *Lewis v. Hunt*,

492 F.3d 565, 570 (5th Cir. 2007) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Moreover, where there has indeed been a statutory waiver of immunity, such waiver must "be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* (quoting *Lane*, 518 U.S. at 192). Importantly, a court's evaluation of waiver must focus on the statutory text itself, as "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text." *See Lane*, 518 U.S. at 192.

Along with the general burden to establish subject matter jurisdiction, Thurston also bears the burden of showing Congress's unequivocal waiver of immunity. *See Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). Accordingly, to establish this Court's subject matter jurisdiction over AAFES, Thurston must demonstrate that Congress unequivocally waived the immunity of the federal government in enacting the FCRA.

**B. Whether the FCRA waives the United States' sovereign immunity is an open question in this Circuit.**

The parties disagree as to whether the FCRA, the statute under which Thurston's claims arise, unequivocally waives the United States' immunity from suit. At the center of this dispute is the FCRA's definition of "person" in its enforcement scheme. The FCRA imposes civil liability for damages on any "person" who willfully or negligently fails to comply with any requirement imposed by the Act. 15 U.S.C. §§ 1681n(a), 1681o(a). Thurston alleges that AAFES violated 15 U.S.C. § 1681s-2, a provision of the FCRA imposing certain duties on those who "furnish information" to credit reporting agencies, by failing to fully and properly investigate the dispute about his Military Star account and to correctly report the results of the investigation. (Compl. [#1] at ¶¶ 115, 126.) This specific subsection imposes a duty to correct and update information on any "person" who "has furnished to a consumer reporting agency information that the person determines is not complete or accurate." 15 U.S.C. § 1681s-

2(a)(2)(B). The FCRA defines the term "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, *government or governmental subdivision or agency*, or other entity." 15 U.S.C. § 1681a(b) (emphasis added). Thurston argues, as have many litigants across the country before him, that by designating "governments" as persons subject to liability under the FCRA, Congress unequivocally waived the immunity of the federal government and its agencies with respect to FCRA claims. (Resp. [#43] at 2.)

Neither the Supreme Court nor the Fifth Circuit has addressed the question of whether the FCRA waived the United States' sovereign immunity, and the Supreme Court recently declined to grant certiorari to resolve what has emerged as a "Circuit split" on the issue. *See Robinson v. Dep't of Educ.*, 140 S. Ct. 1440 (Apr. 20, 2020) (denying petition for review over dissent of Justices Thomas and Kavanaugh). AAFES asks the Court to adopt the reasoning of the Fourth and Ninth Circuit Courts of Appeals, both of which recently held that the statutory text of the FCRA does *not* contain an unambiguous expression of Congressional intent to waive sovereign immunity. *See Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 806 (4th Cir. 2019), *cert. denied*; *see also Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 776 (9th Cir. 2018). Thurston, on the other hand, while acknowledging the recent Fourth and Ninth Circuit decisions, asks this Court to follow the reasoning of a Fifth Circuit case predating *Robinson* and *Daniel*, which held that Congress unequivocally waived the immunity of the federal government in enacting the Equal Credit Opportunity Act ("ECOA"), another consumer protection statute, by including "government or governmental subdivision or agency" in the definition of "person," as in the FCRA. *See Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 993–94 (5th Cir. 1995) (citing 15 U.S.C. §§ 1691a(e), (f)). The only additional Circuit Court of Appeals to address the question of the FCRA's immunity waiver is the Seventh Circuit, which similarly held in 2014 that the FCRA's

definition of "person," by "authorizing monetary relief against *every* kind of government," waived the United States' sovereign immunity. *Bormes v. United States*, 759 F.3d 793, 795–97 (7th Cir. 2014) (on rehearing *en banc*).[2]

As to be expected under these circumstances, there are district court decisions from across the country reaching opposing conclusions. In arguing the reasons that this Court should extend *Moore*'s interpretation of the ECOA to the FCRA, Thurston relies heavily on two district courts cases from this Circuit that adopted *Moore*'s reasoning and predicted that the Fifth Circuit, if faced with the decision, would find that the FCRA explicitly waived the sovereign immunity of the federal government and its agencies. *See Ingram v. Experian Info. Sols., Inc.*, No. 3:16-CV-00210-NBB-RP, 2017 WL 2507694 (N.D. Miss. June 8, 2017); *Kent v. Trans Union, LLC*, No. 4:16-CV-322-A, 2017 WL 3701861 (N.D. Tex. Aug. 25, 2017). Yet, the only district court case from the Fifth Circuit issued since the *Robinson* and *Daniel* decisions followed the reasoning of these opinions, departed from *Moore*'s more simplistic analysis, and, viewing the FCRA more holistically, found that the FCRA does not contain unambiguous language regarding any waiver of sovereign immunity and therefore cannot be an unequivocal expression of Congressional intent to waive the immunity of the United States. *See Johnson v. Trans Union, LLC*, No. 16-1240, 2019 WL 3202212, at *4 (W.D. La. Jul. 15, 2019).

[2] Yet, the Seventh Circuit subsequently held that the FCRA's general civil enforcement provisions could not be read to abrogate the sovereign immunity of *tribal* governments, even if the Act waived *federal* sovereign immunity and even if Indian tribes are, indeed, "governments." *See Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 826 (7th Cir. 2016). Some courts view the distinction made in *Meyers* as suggesting the Seventh Circuit may be retreating from its former holding, while others interpret the decision as clearly reaffirming the *Bormes* decision. *Compare Robinson*, 140 S. Ct. 1440 (Thomas, J., dissenting from denial of cert.) *with Johnson v. Trans Union, LLC*, No. 16-1240, 2019 WL 3202212, at *3 (W.D. La. July 15, 2019).

**C. Ambiguities in the FCRA's structure and text prevent this Court from finding that Congress unequivocally waived the immunity of the United States for claims arising under the Act.**

As previously noted, the waiver of sovereign immunity cannot be implied and must instead be "unequivocally expressed" in the statutory text. *Lewis*, 492 F.3d at 570. Nowhere in the statutory text of the FCRA is there an explicit reference to the waiver of sovereign immunity of the United States. Congress has, in other contexts, expressed its intent to abrogate immunity with great clarity. The Federal Tort Claims Act, for example, contains an entirely separate statutory provision establishing the limited liability of the United States under the Act. *See, e.g.*, 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."). *See also* 28 U.S.C. § 1346(a)(2) (the Little Tucker Act) ("The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon . . . any Act of Congress . . . ."). As the Fourth Circuit noted in *Robinson*, both of these acts specifically reference the United States and its liability under the Act. *See* 917 F.3d at 803. The Ninth Circuit in *Daniel* noted that the Clean Water Act and the Resource Conservation and Recovery Act contain similar direct references indicating an intent to subject the United States to liability. 891 F.3d at 772; *see also* 33 U.S.C. § 1365(a)(1) ("[A]ny citizen may commence a civil action on his own behalf . . . against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency . . .)."); 42 U.S.C. § 6972(a)(1)(A) ("[A]ny person may commence a civil action on his own behalf . . . against any person (including (a) the United States, and (b) any other governmental instrumentality or agency . . .).").

Against this backdrop, federal courts are justly entitled to "presume congressional familiarity" with the need for immunity waivers to be unambiguous and unequivocal. *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). The civil liability provisions of the FCRA, unlike the FTCA of the Little Tucker Act, do not contain any reference to the United States, which is only even arguably implicated through reference to the inclusion of "governments" in the general definition of "persons" applying to the entire Act. "Even the definition section [of the FCRA] does not specifically mention the United States or the federal government." *Robinson*, 917 F.3d at 803 (citing 15 U.S.C. § 1681a(b)).

Despite a lack of any express reference to the waiver of immunity in the FCRA, Thurston argues that this Court is bound to follow *Moore* and find that Congress spoke unequivocally when it enacted the FCRA with respect to its intent to subject the United States to damages suits. Yet *Moore* did not address the FCRA, so it is not binding here. Nor should its reasoning be extended to the FCRA context, because *Moore* did not examine the statutory scheme of the ECOA holistically, and when interpreting the ECOA, failed to consider whether there were other ECOA provisions, aside from the introductory section defining "person" as including "governments," that might further support or call into question the conclusion that Congress intended to abrogate the federal government's immunity in enacting the ECOA.

Instead, the analysis in *Moore* was limited to a comparison of the ECOA and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667e, both of which (along with the FCRA) were enacted under the overarching umbrella of the Consumer Credit Protection Act.[3] *Moore*, 55 F.3d at 994. The Fifth Circuit found it significant and ultimately determinative that TILA contains a

[3] *See also Talley v. U.S. Dep't of Agric.*, No. 07 C 0705, 2007 WL 2028537, at *2 (N.D. Ill. July 12, 2007) (The ECOA, FCRA, and the Truth In Lending Act ('TILA') were all three enacted as part of the broader statutory umbrella of the Federal Consumer Protection Act, and all of these acts define "person" to include "government or governmental subdivision or agency.").

specific provision *preserving* the United States' sovereign immunity against TILA claims, whereas the ECOA does not. *See* 15 U.S.C. § 1612(b) ("No civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any department or agency thereof, or upon any State or political subdivision thereof, or any agency of any State or political subdivision."). The absence of any express preservation of the United States' sovereign immunity in the ECOA was, according to the Fifth Circuit, a clear indication of Congress's intent to subject the federal government to suit under the ECOA, which was passed after TILA. *Moore*, 55 F.3d at 994 ("Clearly, TILA indicates that Congress intended 'government or governmental subdivision or agency' to include the United States, because otherwise it would not have specifically preserved the United States' immunity unless it believed that such immunity had been previously waived."). The *Moore* court's inference of waiver based on the absence of the express retention of immunity—as opposed to the express waiver of it—can be characterized as a waiver by implication and is at odds with the requirement of a clear, unequivocal expression of Congressional intent to subject the United States to suit.

The Seventh Circuit's decision in *Bormes* does not provide much more guidance, in light of the fact that the Government in that case had conceded that the United States, as a "government," was a "person" subject to the duties imposed by the FCRA, a concession not made here. 759 F.3d at 795. The real issue in *Bormes* was, therefore, whether there was any statutory basis for imposing duties on the federal government, on the one hand, yet not imposing liability for damages on the other. *Id.* The Seventh Circuit found that "[n]othing in the FCRA allows the slightest basis for [that] distinction." *Id.* And as previously noted, a later panel of the Seventh Circuit carved out an exception to *Bormes*'s holding for the tribal governments of federally recognized Indian tribes. *See Meyers*, 836 F.3d at 826.

Ultimately, this Court is left with the underlying question—is the general reference to "governments" in the definition of "persons" in the FCRA, despite the lack of any specific reference to the United States or the waiver of its immunity in the civil liability provisions of the FCRA, sufficient to abrogate immunity and subject the federal government to suits for damages under the Act?[4] The Fourth Circuit in *Robinson* and Ninth Circuit in *Daniel* engaged in a more holistic and comprehensive analysis of the structure and statutory provisions of the FCRA than the Seventh Circuit did of the FCRA in *Bormes* or the Fifth Circuit did of the ECOA in *Moore*. The *Robinson* and *Daniel* courts, after examining more than just the definitional provisions of the FCRA, both concluded that there were ambiguities in the Act that prevented a finding of a clear and unequivocal waiver of sovereign immunity. *See Robinson*, 917 F.3d at 806 ("[The] FCRA's text and structure make clear that no unambiguous and unequivocal waiver of sovereign immunity has taken place."); *Daniel*, 891 F.3d at 776 (viewing the statute as ambiguous with respect to waiver of immunity and concluding "Congress never considered extending the enforcement provisions of the FCRA to the federal government."). The undersigned agrees with the reasoning of these courts.

The circuit courts in *Robinson* and *Daniel* based their decisions in part on the fact that there is an explicit waiver of federal sovereign immunity found elsewhere in the FCRA, in a

[4] The use of the term "government" in the FCRA's definition of "person" has given rise to numerous lawsuits against various governmental entities at other levels of government. *See, e.g.*, *Cutrer v. Tarrant County Local Workforce Dev. Bd.*, 943 F.3d 265 (5th Cir. 2019); *Kerce v. Fla. Dep't of Law Enforcement/Capitol Police*, No. 4:16-cv-239/MCR/GRJ, 2017 WL 11504388 (N.D. Fla. Aug. 16, 2017); *Pele v. Penn. Higher Educ. Assistance Agency*, 53 F. Supp. 3d 857 (E.D. Va. 2014), *vacated by* 628 Fed. App'x 870 (4th Cir. 2015). Of course, some of these cases have involved the asserted defense of Eleventh Amendment immunity. *See Pele*, 53 F. Supp. 3d at 871 (granting summary judgment to Pennsylvania state agency on Eleventh Amendment immunity grounds); *but see Pele*, 628 Fed. App'x at 872 (vacating decision and holding that agency was not arm of the state for immunity purposes). Whether the FCRA expressly waives the Eleventh Amendment immunity of state governments and their agencies is not before the Court.

provision that does not apply to Thurston's claims. Section 1681u of the FCRA empowers the Federal Bureau of Investigation to obtain information from consumer reporting agencies in connection with its counterterrorism efforts and includes a clear waiver of immunity. 15 U.S.C. § 1681u(j) ("Any agency or department of the United States obtaining or disclosing any consumer reports, records, or information contained therein in violation of [§ 1681u] is liable to the consumer to whom such consumer reports, records, or information relate" for statutory, actual, and sometimes punitive damages.). Unlike the arguments proposed for inferring the waiver of immunity with respect to the FCRA's general civil liability provisions, "the import of § 1681u(j) is plain as day." *Robinson*, 917 F.3d at 803–04. *See also Daniel*, 891 F.3d at 772 ("Because Congress knew how to explicitly waive sovereign immunity in the FCRA, it could have used that same language when enacting subsequent enforcement provisions."). Notably, the Fifth Circuit did not consider such a provision in reaching its conclusion regarding the ECOA's immunity waiver in *Moore*. This Court also finds the clear, unambiguous immunity waiver in Section 1681u significant and that it weakens Thurston's argument for extending *Moore*'s reasoning to the FCRA.

The undersigned is also persuaded by the *Daniel* court's examination of other sections of the FCRA that reference "person" and the "implausible results" created by substituting "the United States" for "person" in every provision throughout the Act. *See* 891 F.3d at 770. Doing so would not only subject the United States (not just its employees) to criminal penalties, such as incarceration, as well as punitive damages, but it would also authorize the Federal Trade Commission, the Consumer Financial Protection Bureau, and even state governments to initiate enforcement actions against the United States for violations of the FCRA. *Id.* (citing *See* 15 U.S.C. §§ 1681n, 1681q, 1681s(a)(2)(A), 1681s(c)(1)(B)). In the context of other sovereign

immunity waivers, such as the Federal Tort Claims Act, Congress took care to prohibit the assessment of punitive damages against the United States. *See id.* at 771 (citing 28 U.S.C. § 2674). "Hence, a finding of waiver of sovereign immunity to authorize Daniel's suit would require us to believe that Congress chose to prohibit punitive damages against the United States for tortiously killing people, . . . but allowed punitive damages on the government for printing overly revealing debit card receipts." *Id.* (internal citation omitted).

Again, "ambiguities" in the FCRA's language must be "construed in favor of immunity." *Id.* at 774 (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)). Given that "the federal government is the nation's largest employer and lender," a waiver of immunity based solely on the reference to "governments" in the definitional portion of the FCRA seems far too "casual." *Robinson*, 917 F.3d at 804. Congress must speak unequivocally for this Court to subject the United States to a claim for damages for failing to accurately report consumer debt information.

## IV. Conclusion and Recommendation

Having considered AAFES's motion, the response and reply thereto, the pleadings, and the governing law, the undersigned recommends that Defendant Army and Air Force Exchange Service, d/b/a Military Star's Motion to Dismiss [#29] be **GRANTED** and Thurston's claims against Defendant Army and Air Force Exchange Service, d/b/a Military Star be **DISMISSED**.

## V. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 2nd day of November, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE